415 S.E.2d 280

**The COMMITTEE ON LEGAL ETHICS OF the WEST VIRGINIA STATE BAR, Complainant,**

v.

**George S. TAYLOR, a Member of the West Virginia State Bar, Respondent.**

**No. 20679.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 14, 1992.

Decided March 5, 1992.

Sherri D. Goodman, W.Va. State Bar, Charleston, for Complainant.

George S. Taylor, pro se.

MILLER, Justice:

■ This is a disciplinary proceeding initiated by the Committee on Legal Ethics of the West Virginia State Bar (Committee) against George S. Taylor, a member of the Bar. The Committee asks us to issue a public reprimand to Mr. Taylor based upon his issuance of a bad check and his subsequent failure to make payment on the dishonored check. We agree with the Committee's conclusion that this action constitutes an ethical violation and, therefore, issue a public reprimand.

■ The charge before the Committee originally consisted of three counts. One count dealt with a client whose case had previously been heard in the magistrate court and had been dismissed. Mr. Taylor, who had not been involved in the earlier suit, refiled the suit in circuit court. The circuit court found the second case to be barred by *res judicata*. The Committee dismissed the ethics charge on the ground that Mr. Taylor relied upon indications in the court file that the original case had been dismissed without prejudice. We agree with the Committee that Mr. Taylor's reliance on the court file was reasonable, and, therefore, his actions did not constitute an ethical violation.

A second charge, which dealt with Mr. Taylor's receipt of $500 for representing the same client, was dismissed by Bar counsel prior to the evidentiary hearing before the Committee. There is no record of the reason for this dismissal.

The third count of the disciplinary charge deals with Mr. Taylor's issuance of a check, for which there were insufficient funds in his account, to Mullens Travel Agency. Although the Committee's charge deals only with the check issued to Mullens Travel, it was not an isolated incident. Mr. Taylor issued several bad checks in the spring of 1988, and he was subsequently indicted by a grand jury in October, 1988. The indictment charged three violations of W.Va. Code, 61–3–39 (1977), for writing worthless checks. As a result of a plea agreement, two of the counts were dropped and the third was reduced from a felony to a misdemeanor. One of the counts which was dropped involved the check to Mullens Travel.

The circuit court accepted Mr. Taylor's plea of guilty to the one misdemeanor count of writing a worthless check and sentenced him to six months in jail and a fine of $200. Mr. Taylor's sentence was suspended, and he was placed on probation for two years, with several conditions: He was to serve thirty days in jail on the weekends; he was required to make restitution, with ten percent interest; he was to perform 300 hours of public service and pay the costs of the criminal proceedings. As of the date of the Committee hearing, Mr. Taylor had failed to make restitution to any of the victims.

The Committee found that Mr. Taylor's conduct with regard to the bad checks was in violation of Disciplinary Rule 1–102(A)(3), (4), and (6) of the Code of Professional Responsibility, which was in effect at the time of these occurrences.[1]

There are not many jurisdictions that have dealt with the situation where the bad check was the sole subject matter of the disciplinary proceeding.[2] Florida appears

1. Disciplinary Rule 1–102 of the Code of Professional Responsibility stated, in pertinent part:

   **DR 1–102 Misconduct.**—(A) A lawyer shall not:

       \*   \*   \*   \*   \*   \*

   "(3) Engage in illegal conduct involving moral turpitude.
   "(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

       \*   \*   \*   \*   \*   \*

   "(6) Engage in any other conduct that adversely reflects on his fitness to practice law."
   As of January 1, 1989, the Code of Professional Responsibility was revised and readopted as the Rules of Professional Conduct. The present counterpart to DR 1–102(A)(3), (4), and (6) is found in Rule 8.4. *See* Michie's West Virginia Rules 521 (1991).

2. In a number of states, the attorney's bad check charge has been combined with other disciplinary violations, such as misusing his fiduciary account or failing to promptly pay over a client's funds. *See, e.g., People v. Horn,* 738 P.2d 1186 (Colo.1987) (preexisting suspension for failure to comply with continuing legal education requirements and failure to respond without good cause to grievance committee); *Matter of Slenker,* 424 N.E.2d 1005 (Ind.1981)

to have had the most cases.[3]

In *Florida Bar v. Davis*, 361 So.2d 159 (Fla.1978), the attorney had issued three bad checks to his secretary in payment for her legal services. When the attorney was advised that the checks were worthless, he issued a promissory note to his secretary for the amount of the bad checks. However, he failed to pay the note, and, ultimately, a judgment was obtained against him. He deposited another bad check at his bank. The bank had to obtain a judgment against the attorney. This judgment was not satisfied. He was also convicted of the misdemeanor of uttering a worthless check.

■ The lawyer in *Davis* was charged with several ethical violations similar to those in this case, i.e., illegal conduct involving moral turpitude, conduct involving dishonesty, fraud, deceit, or misrepresentation, and conduct that adversely reflected on his fitness to practice law. The Florida Supreme Court initially considered whether the attorney's conduct was sufficient to constitute illegal conduct involving moral turpitude and cited this definition: "A crime involves moral turpitude if it is an act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow men or to society in general." 361 So.2d at 161. This definition is similar to the one adopted in Syllabus Point 2 of *Committee on Legal Ethics v. Scherr*, 149 W.Va. 721, 143 S.E.2d 141 (1965):

"The best general definition of the term 'moral turpitude' is that it imports

an act of baseness, vileness or depravity in the duties which one person owes to another or to society in general, which is contrary to the usual, accepted and customary rule of right and duty which a person should follow."

The Florida Supreme Court in *Davis* also went on to point out that "where there is no intent to defraud ... the act itself is not so base as to fall into the category of illegal conduct involving moral turpitude." 361 So.2d at 161. In *Committee on Legal Ethics v. Six*, 181 W.Va. 52, 54, 380 S.E.2d 219, 221 (1989), we discussed the concept of moral turpitude at some length and made this statement: "Where fraud or a fraudulent intent is an essential element of the offense, the crime is one of moral turpitude *per se.*"

In *Davis*, the court found no fraud and, therefore, that no disciplinary action was warranted based on the moral turpitude violation. The Florida Supreme Court appeared, in part, to recognize that under Florida law, conviction of a crime of moral turpitude would result in disbarment, citing this statement from *In re LaMotte*, 341 So.2d 513, 517 (Fla.1977):

" 'Lawyers are disbarred only in cases where they commit extreme violations involving moral turpitude, corruption, defalcations, theft, larceny or other serious or reprehensible offenses....' "

Disbarment is an extreme penalty and should only be imposed in those rare cases where rehabilitation is highly im-

(unauthorized personal use of estate funds and alcohol abuse); *Kentucky Bar Ass'n v. Friedlander*, 536 S.W.2d 454 (Ky.), *cert. denied*, 429 U.S. 922, 97 S.Ct. 321, 50 L.Ed.2d 290, (1976) (using funds from escrow account of corporation to benefit law firm which owns corporation and issuing bad checks on that account); *Matter of Gallow*, 110 A.D.2d 920, 487 N.Y.S.2d 168 (1985) (neglect and mishandling of estate); *Matter of Purpura*, 69 A.D.2d 155, 419 N.Y.S.2d 22 (1979) (forgery and obtaining blank checks from associate without consent); *Matter of Spata*, 34 A.D.2d 63, 309 N.Y.S.2d 95 (1970) (conversion of funds and neglect of legal matter); *State ex rel. Oklahoma State Bar Ass'n v. Smith*, 615 P.2d 1014 (Okla.1980) (commingling of funds, refusal to pay co-counsel, and failure to return client

funds within reasonable time); *In re Haberlin*, 242 Or. 564, 410 P.2d 1022 (1966) (embezzlement of funds from estate of ward).

3. *See, e.g., In re Gorman*, 299 So.2d 24 (Fla. 1974); *In re Hill*, 298 So.2d 161 (Fla.1974); *The Florida Bar v. Thomson*, 271 So.2d 758 (Fla. 1972); *The Florida Bar v. Kelly*, 269 So.2d 362 (Fla.1972); *The Florida Bar v. Hill*, 265 So.2d 698 (Fla.1972); *The Florida Bar v. Parsons*, 238 So.2d 644 (Fla.1970); *The Florida Bar v. Dingle*, 235 So.2d 479 (Fla.1970); *The Florida Bar v. Budzinski*, 217 So.2d 108 (Fla.1968); *The Florida Bar v. Charles*, 201 So.2d 713 (Fla.1967); *The Florida Bar v. Baxter*, 178 So.2d 699 (Fla.1965); *State ex rel. Florida Bar v. Hill*, 132 So.2d 170 (Fla.1961).

probable." 361 So.2d at 162.[4]

■ We agree with the Florida Supreme Court that the writing of a bad check by an attorney ordinarily does not constitute an act or crime involving moral turpitude. As a consequence, we find that the respondent's acts are not punishable under DR 1–102(A)(3).

■ However, this is not to say that disciplinary action is not appropriate when worthless checks are written by an attorney. Where an attorney writes a worthless check under circumstances that demonstrate "dishonesty ... or misrepresentation" under DR 1–102(A)(4) or "conduct that adversely reflects on [the] fitness to practice law" under DR 1–102(A)(6), disciplinary punishment is warranted. It should be shown that the attorney was either aware that the check was worthless when it was written or failed to make it good within a reasonable period of time after the attorney was aware that there were insufficient funds. *See Matter of Holloway*, 514 N.E.2d 829 (Ind.1987); *In re Johnston*, 524 P.2d 593 (Utah 1974).

Here, even if we accept the respondent's initial story that he believed there were sufficient funds in his account when he wrote the check, his more than two-year delay in repaying the worthless check cannot be justified. His action, at the very least, reflects adversely on his fitness to practice law under DR 1–102(A)(6). It requires no extensive discussion to demonstrate that an attorney who either knowingly issues a bad check or delays making it good indulges in conduct that dishonors the practice of law. The public perception of lawyers cannot be served when they fail to pay their checks.

We find that the Committee's recommendation that the respondent receive a public reprimand, while lenient, is appropriate in this case because the full parameters of our law in this area had not been set by this Court at the time of the Committee's hearing. In the future, we expect the Committee to charge an attorney who has written bad checks with an ethical violation in accordance with the standards set forth herein.

For the foregoing reasons, we issue a public reprimand to Mr. Taylor. Because restitution has been made since the filing of this case, we make no further order.

Public reprimand.

---

**4.** Article VI, Section 23 of the By–Laws of the West Virginia State Bar provide for the annulment of an attorney's license for a crime involving moral turpitude. Its relevant provision is: "The license of any attorney shall be annulled and such attorney shall be disbarred upon proof that he has been convicted—(a) of any crime involving moral turpitude or professional unfitness[.]"