437 S.E.2d 443

The **COMMITTEE ON LEGAL ETHICS OF the WEST VIRGINIA STATE BAR,** Complainant,

v.

**George S. TAYLOR, A Member of the West Virginia State Bar,** Respondent.

No. 21725.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 14, 1993.

Decided Nov. 1, 1993.

Sherri D. Goodman, Bar Counsel, Charleston, for complainant.

George S. Taylor, pro se.

PER CURIAM:

In this attorney disciplinary proceeding, the Committee on Legal Ethics of the West Virginia State Bar ("the Committee") recommends that this Court suspend the respondent's, George S. Taylor, license to practice law for two consecutive six-month periods,

require the respondent to pass the Multistate Professional Responsibility Examination as a condition of reinstatement and further order the respondent to pay all costs of this disciplinary proceeding. We adopt the recommendation of the Committee. For the reasons stated below, we hereby order the suspension of the respondent's license to practice law in the State of West Virginia for two consecutive six-month periods. As a condition for the respondent's reinstatement to the West Virginia State Bar, we order that the respondent must pass the Multistate Professional Responsibility Examination, and we will also require the respondent to pay all costs associated with this disciplinary proceeding.

I.

In this disciplinary matter before us, two ethics complaints were filed against the respondent and heard separately. We, therefore, will discuss each matter separately.

A.

With respect to the first complaint, the hearing panel of the Committee found that the respondent had been practicing law in Mingo County, West Virginia, as an Assistant Public Defender when he knew his law license had been suspended by this Court for Mandatory Continuing Legal Education [1] deficiencies in violation of Rule 5.5(a) of the Rules of Professional Conduct.[2] The facts leading up to this finding are as follows.

On October 11, 1988, the Mandatory Continuing Legal Education Commission ("the Commission"), sent a certified letter to the respondent advising him that the Commission would seek suspension of his law license unless he submitted proof, within 30 days, that he had completed the requisite continu-

---

1. By order dated July 1, 1986, this Court created the Mandatory Continuing Legal Education Commission ("the Commission"). The Commission, for the first two fiscal years, required attorneys to complete six hours of continuing legal education ("CLE") on a staggered alphabetical basis. For the 1987–88 year ending on June 30, 1988, the respondent, along with other attorneys at the lower half of the alphabet, was required to submit proof by July 31, 1988, that they had taken the requisite number of CLE hours. As of July 1,

1988, attorneys were required to complete 24 hours of CLE in a two-year period, with at least three of those hours being in the areas of either ethics or office management.

2. Rule 5.5(a) of the Rules of Professional Conduct provides: "A lawyer shall not: (a) practice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction[.]"

ing legal education ("CLE") hours. On this same day, the letter was returned as unclaimed to the Commission.

On November 22, 1988, the Commission petitioned this Court for suspension of the respondent's license to practice law. The respondent attempted to complete the requisite hours, but ultimately failed to do so. As a result, this Court, by order dated June 12, 1989, suspended the respondent's license to practice law in this State for failure to comply with the CLE requirements for the 1987–88 reporting year.

On January 12, 1990, Hope Gresham, the Commission's coordinator, sent a letter to the respondent, as a follow-up measure after a telephone conversation she had with the respondent, explaining the requirements for reinstatement to the State Bar following his suspension.

In September of 1990, during the respondent's suspension, he sent a resume to the Public Defender's Office for the 30th Judicial Circuit in Williamson, West Virginia, for the position of Assistant Public Defender. The resume contained numerous inaccuracies, and moreover, the resume failed to state that the respondent's law license had been suspended.[3]

The Public Defender's Board was unable to verify any of the information on the respondent's resume, but nevertheless, offered the respondent the position. The respondent began working for the Public Defender's office on October 8, 1990, and he continued to work there until he was terminated on November 9, 1990.

On November 5, 1990, the Commission received the respondent's facsimile which contained a Form C, the form used by attorneys to report the completion of CLE hours, indicating that the respondent had complied with the CLE requirements. The form was processed later that day after the State Bar received the respondent's dues and late fee.

The respondent received a copy of the statement of charges brought against him for practicing law when he knew his law license had been suspended, and he received a notice of hearing scheduling this disciplinary proceeding for June 20, 1992. The respondent did not appear at the hearing, but eventually he sent his answer with respect to the pending charges. To ensure that the respondent had a fair opportunity to respond to the charges against him, another hearing was scheduled for January 16, 1993, and the respondent received notice of such hearing. The respondent sent a letter stating that he did not wish to appear at the hearing.

For the reasons set forth below, we conclude that the respondent practiced law when he knew his license had been suspended for CLE deficiencies, in violation of Rule 5.5(a) of the Rules of Professional Conduct.

### B.

With respect to the second complaint, the hearing panel found that the respondent wrote a check on an account which he knew lacked sufficient funds, and moreover, he failed to make restitution when the incident was brought to his attention in violation of *W.Va.Code*, 61–3–39 [1977], and Rule 8.4(b) and (c) of the Rules of Professional Conduct.[4]

---

**3.** At the time the resume was sent, the respondent was under indictment in Mercer County, West Virginia, for writing worthless checks and failing to make payments on such checks. Ultimately, the respondent plead guilty for writing a worthless check, in violation of *W.Va.Code*, 61–3–39 [1977] and Disciplinary Rule 1–102(A)(3), (4) and (6), and thus, was publicly reprimanded by this Court. *See Committee on Legal Ethics v. Taylor*, 187 W.Va. 39, 415 S.E.2d 280 (1992).

**4.** *W.Va.Code*, 61–3–39 [1977] provides, in part:
It shall be unlawful for any person, firm or corporation to obtain any money, services, goods or other property or thing of value by means of a check, draft or order for the pay-

ment of money or its equivalent upon any bank or other depository, knowing at the time of the making, drawing, issuing, uttering or delivering of such check, draft or order that there is not sufficient funds on deposit in or credit with such bank of other depository with which to pay the same upon presentation[.]
Rule 8.4(b) and (c) of the Rules of Professional Conduct provides: "It is professional misconduct for a lawyer to: (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects; (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]"

The facts leading up to this finding are as follows.

In 1991, the respondent ordered a computer software package from a company, Blue Jay Systems, located in Sarasota, Florida. The respondent sent a check, dated July 12, 1991, to Blue Jay Systems in the amount of $369.00. On July 30, 1991, Scott McIntire, the company's owner, sent the software to the respondent.

In regard to the respondent's checking account, bank statements indicated only one deposit had been made and that was the initial deposit of $1,325.81. The respondent had written sixteen checks out of this account before writing the check to Blue Jay Systems, and the account had insufficient funds for the last six of the sixteen checks. As time passed and overdraft charges were added, the account registered a negative balance. Between April 15 and May 15 of 1991, the bank closed the respondent's account.

Eventually, the check was returned to Blue Jay Systems, and Mr. McIntire then contacted the respondent, who said he would send another check. However, the respondent never sent the check, nor did he ever return the software.

Mr. McIntire, in order to seek collection of the money, gave the check to Christopher George, who operates a collection agency in West Virginia. Mr. George attempted to contact the respondent but to no avail. In November of 1991, Mr. George filed an ethics complaint against the respondent concerning the check.

On September 24, 1992, the respondent personally received the statement of charges brought against him with respect to Mr. George's complaint; and, on December 17, 1992, the respondent received notice of the hearing scheduled for January 16, 1993. On January 11, 1993, the respondent notified counsel for the Bar that he would not be appearing at the hearing, rather he would make his arguments to this Court.

For the reasons stated below, we conclude that the respondent wrote a check on an account which he knew lacked sufficient funds and he failed to make restitution, in violation of *W.Va.Code,* 61–3–39 [1977], and

Rule 8.4(b) and (c) of the Rules of Professional Conduct.

## II.

■ Historically, this Court has placed the burden of proof on the Committee to prove by full, preponderating and clear evidence the charges contained in the complaint filed on behalf of the Committee, as stated in syllabus point 1 of *Committee on Legal Ethics v. Lewis,* 156 W.Va. 809, 197 S.E.2d 312 (1973):

> In a court proceeding prosecuted by the Committee on Legal Ethics of the West Virginia State Bar for the purpose of having suspended the license of an attorney to practice law for a designated period of time, the burden is on the Committee to prove by full, preponderating and clear evidence the charges contained in the complaint filed on behalf of the Committee.

In this case, we find that the Committee has met this burden.

## A.

■ The first matter before us deals with the charge that the respondent continued to practice law knowing that his law license had been suspended by this Court for deficiencies in his CLE credits, in violation of Rule 5.5(a) of the Rules of Professional Conduct.

The respondent submitted a letter on his behalf. With respect to this charge, the respondent's sole defense was he did not receive any sort of correspondence from the Commission informing him that his CLE hours were insufficient and that he had not been reinstated. However, toward the end of this letter, the respondent admits, that as of July 1990, he was aware of the fact that his law license had been suspended.

The respondent's defense is a tenuous one at best. There is no evidence to suggest that the respondent had made any sort of inquiry as to whether he had been reinstated before taking the position with the Public Defender's office on October 8, 1990. Furthermore, he was not forthright with the Board of Directors of the Public Defender's office ("the Board") in that he failed to tell them his law license had been suspended, and that

he was under indictment for writing worthless checks. Moreover, the respondent deliberately misled the Board in that he made numerous inaccuracies on his resume regarding his credentials in fabricating information and withholding other pieces of information.

We find that the evidence quite clearly supports the Committee's position that the respondent knew his license to practice law had been suspended when he began working with the Public Defender's office. This is a clear violation of Article II, § 3 of the By Laws of the West Virginia State Bar,[5] and Rule 5.5(a) of the Rules of Professional Conduct.

### B.

The second matter before us involves the charge that the respondent knowingly wrote a check on an account that lacked sufficient funds, and the respondent failed to make restitution, in violation of *W.Va.Code*, 61–3–39 [1977], and Rule 8.4(b) and (c) of the Rules of Professional Conduct.

In his brief, the respondent claims that after receiving and inspecting the software, he realized that the software did not meet up to his expectations. The respondent then stated that he called Blue Jay Systems informing the company that he was dissatisfied with the software, and he asked them not to deposit the check. In oral argument, the respondent argued on his own behalf that he was unable to return the software to Blue Jay Systems, because he had misplaced it.[6]

We are not persuaded by the respondent's argument. The respondent's conduct in this instance is particularly egregious in that he has been publicly reprimanded by this Court for engaging in virtually the same type of misconduct. *See Taylor, supra.*

In this present action, we believe there is sufficient evidence to support the Committee's contention that the respondent knew he had written a check on an account lacking sufficient funds. The respondent was sent numerous bank statements indicating the activity which took place in his account. Even if this Court were to accept the respondent's assertion that he did not know that the account had been closed and he did not mean to write a worthless check, it has been more than two years since the purchase of the software and the respondent has yet to make payment on the check.

 This Court has previously discussed the implications that prior discipline can have on a subsequent disciplinary proceeding, in syllabus point 5 of *Committee on Legal Ethics v. Tatterson,* 177 W.Va. 356, 352 S.E.2d 107 (1986): "Prior discipline is an aggravating factor in a pending disciplinary proceeding because it calls into question the fitness of the attorney to continue to practice a profession imbued with a public trust."

The respondent's actions, or the lack thereof in this case, adversely reflect upon the respondent's ability to carry out and uphold the laws and ethics of this State. This type of deceitful misconduct by a lawyer will not be tolerated by this Court, as it is in direct contravention of the oath the respondent took when he became a member of the West Virginia Bar. Therefore, for the reasons stated herein, we find that the respondent continued to practice law knowing that his law license had been suspended for deficiencies in his CLE credits, in violation of Rule 5.5(a) of the Rules of Professional Conduct; and, the respondent knowingly wrote a check on an account that lacked sufficient funds, and the respondent failed to make restitution, in violation of *W.Va.Code*, 61–3–

---

5. Article II, § 3 of the By–Laws of the West Virginia State Bar provides:

 An active member in good standing shall be a person lawfully admitted to the practice of the law in the State of West Virginia, who is lawfully engaged in the practice of law in this State, who is enrolled as an active member, who is not under suspension, and who shall each year duly pay the annual active membership fee to the state bar.

6. Also, in oral argument before this Court, the respondent claimed that he had paid Blue Jay Systems approximately $300.00 for the software he had purchased. On that same day, the office of the Committee hand-delivered a letter to the office of the Clerk of this Court stating that after making the proper inquiries, it was discovered Mr. McIntire had never received any sort of payment from the respondent. This letter was copied to the respondent, however, he never responded to the assertions in the letter.

39 [1977], and Rule 8.4(b) and (c) of the Rules of Professional Conduct. We accept the recommendation of the Committee and hereby order the suspension of the respondent's license to practice law in the State of West Virginia for two consecutive six-month periods. As a condition for the respondent's reinstatement to the West Virginia State Bar, we order that the respondent must pass the Multistate Professional Responsibility Examination, and we will also require the respondent to pay all costs associated with this disciplinary proceeding.

License Suspended.