451 S.E.2d 440

**LAWYER DISCIPLINARY BOARD, Complainant,**

v.

**George Sylvester TAYLOR, a Member of the West Virginia State Bar, Respondent.**

No. 22412.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 5, 1994.

Decided Nov. 22, 1994.

Sherri D. Goodman, Chief Disciplinary Counsel, W. Va. State Bar, Charleston, for complainant.

George Sylvester Taylor, pro se.

PER CURIAM:

In this attorney disciplinary proceeding, the Lawyer Disciplinary Board (hereinafter "Board") recommends that this Court annul the law license of the respondent, George Sylvester Taylor, a suspended member of the West Virginia State Bar, for ethical violations involving worthless checks and receipt of goods without payment. The Board further recommends that Mr. Taylor not be permitted to petition for reinstatement until he has made restitution to all individuals and entities to whom he tendered worthless checks. For the reasons stated below, we adopt the Board's recommendations and order the annulment of Mr. Taylor's license to practice law in West Virginia. We further order that Mr. Taylor not be permitted to petition for reinstatement until he has made restitution to all individuals and entities to whom he tendered worthless checks.

I

On January 15, 1994, a statement of charges was issued against Mr. Taylor by the Board's Investigative Panel.[1] Though Mr. Taylor was personally served with this statement of charges on February 3, 1994, he has not filed an answer thereto. A prehearing procedures and scheduling order, scheduling a prehearing conference on May 24, 1994, at 9:30 a.m., was served upon Mr. Taylor at his Charlotte, North Carolina address and at his post office box in Logan County, West Virginia, by certified mail, return receipt requested. Service was accepted on May 6, 1994 and May 7, 1994.

According to the sworn testimony of Cynthia Lowther, a legal ethics assistant at the West Virginia State Bar, she telephoned Mr. Taylor in North Carolina at 9:20 a.m. on May 24, 1994. Mr. Taylor told Ms. Lowther that he had a previous engagement and would not be participating in the prehearing conference, which was to begin in ten minutes.

During the prehearing conference, which was conducted despite Mr. Taylor's absence, Chief Disciplinary Counsel moved the Committee on Legal Ethics Hearing Panel Subcommittee (hereinafter "Subcommittee") for an order deeming the charges contained in the current statement of charges to be admitted pursuant to *Committee on Legal Ethics v. Martin*, 187 W.Va. 340, 419 S.E.2d 4 (1992)[2] and cancelling the hearing scheduled for June 7, 1994. The Subcommittee granted the Chief Disciplinary Counsel's motion.

Though this matter was submitted on briefs to this Court on October 5, 1994, Mr. Taylor did not respond to the Board's findings of fact and conclusions of law and the recommendation that his law license be annulled.[3] We note that in the two prior disciplinary proceedings instituted against Mr. Taylor,[4] he chose not to participate in the

---

1. In a letter to Mr. Taylor, dated December 1, 1993, the State Bar's Chief Disciplinary Counsel sought an answer to the allegations which later formed the bases of count I and count IV of the statement of charges. Mr. Taylor did not respond to that letter.

2. Syllabus point 2 of *Committee on Legal Ethics v. Martin*, 187 W.Va. 340, 419 S.E.2d 4 (1992) provides:

   In order to expedite the investigation of an ethics complaint by the Bar, an attorney's failure to respond to a request for information concerning allegations of ethical violations within a reasonable time will constitute an admission to those allegations for the purposes of the disciplinary proceeding.

3. The record before us consists of the following: record of proceedings before the Board, including the hearing panel's adoption of the Subcommittee report; the Subcommittee report; and the pleadings in this matter, including the transcript of the May 24, 1994 telephonic prehearing conference in which Mr. Taylor chose not to participate.

4. In *Committee on Legal Ethics v. Taylor*, 187 W.Va. 39, 415 S.E.2d 280 (1992), this Court publicly reprimanded Mr. Taylor for writing worthless checks, in violation of *W.Va.Code*, 61-3-39 [1977] and Disciplinary Rule 1-102(A)(3), (4) and (6). Subsequently, in *Committee on Legal Ethics of W. Va. v. Taylor*, 190 W.Va. 133, 437 S.E.2d 443 (1993), this Court suspended Mr.

hearings. Furthermore, he has not yet reimbursed the Board for the costs of those proceedings, though he was ordered to do so.

## Count I

■ Mr. Taylor maintained two bank accounts at the Logan Bank & Trust Company: (1) account number 008–649–5, in the name of "G. Sylvester Taylor, P.C." and (2) account number 002–943–2, in the name of "Escrow Account for G. Sylvester Taylor, P.C." Between July 13, 1992, the date the escrow account was opened, and October 30, 1992, Mr. Taylor wrote five checks totalling $842.16 [5] which were returned for insufficient funds. As of September 30, 1992, the account was in arrears $49.95, having incurred $80 worth of nonsufficient funds charges.

Mr. Taylor opened the "G. Sylvester Taylor, P.C." account on October 4, 1991. Between May 29, 1992 and August 31, 1992, Mr. Taylor wrote thirteen checks in the amount of $5,255.42 [6] which were returned for insufficient funds. There was no activity in that account after August, 1992. That account was eventually closed.

Mr. Taylor also maintained the following accounts at The National Bank of Logan: (1) account number 39791, maintained from January 27, 1993, until at least July 1, 1993, in the name of "G. Sylvester Taylor, Jr., Attorney at Law—Trust Account"; (2) account number 39802, maintained from February 22, 1993, until June 30, 1993, in the name of "G. Sylvester Taylor, Jr., P.C."; and (3) account number 4–47957, maintained from August 7, 1992, until March 25, 1993, in the name of "G. Sylvester Taylor or Lessie A. Taylor."

Mr. Taylor wrote two checks totalling $700 [7] on the trust account which were returned for insufficient funds. Similarly, he wrote six checks on the P.C. account in the amount of $2,042.65 and sixteen checks on his personal account in the amount of $4,361.83, all of which were returned for insufficient funds.

The Board has charged Mr. Taylor with engaging in a pattern of knowingly writing checks on bank accounts with insufficient funds, in violation of *W.Va.Code*, 61–3–39 [1977] [8] and Rule 8.4(b) and (c) of the *Rules*

---

Taylor's law license for two consecutive six-month periods for (1) practicing law knowing that his law license had been suspended for deficiencies in his continuing legal education credits, in violation of Rule 5.5(a) of the *Rules of Professional Conduct* and (2) for writing a check on an account which he knew lacked sufficient funds and failing to make restitution, in violation of *W.Va.Code*, 61–3–39 [1977] and Rule 8.4(b) and (c) of the *Rules of Professional Conduct*.

5. Mr. Taylor wrote the following checks on his escrow account, all of which were returned for insufficient funds: check number 1025, dated August 14, 1992, to Sebastian's Closet, in the amount of $100; check number 1026, dated August 14, 1992, to Neiman Marcus, in the amount of $195.04; check number 1027, dated August 20, 1992, to NBI, in the amount of $128; check number 1030, dated September 1, 1992, to Burlington Coat Factory in the amount of $276.17; and check number 1033, dated September 2, 1992, to Burlington Coat Factory, in the amount of $142.99.

6. Among the thirteen checks written on this account and returned for insufficient funds were: check number 1378, dated June 10, 1992, to Sak's Fifth Avenue, in the amount of $982.30; check number 1382, dated June 5, 1992, to the Brass Boot, in the amount of $302.10; check number 1384, dated June 12, 1992, to Sak's Fifth Avenue, in the amount of $1,401; check number 1387, dated July 17, 1992, to B & L Jewelers, in

the amount of $135.68; check number 1388, dated June 25, 1992, to Sak's Fifth Avenue, in the amount of $1,303.50.

7. Mr. Taylor wrote the following checks on this account which were returned for insufficient funds: check no. 175, dated June 7, 1993, to Greg Yeager (rent), in the amount of $500 and check number 178, dated June 9, 1993, to C & P Telephone, in the amount of $200.

8. *W.Va.Code*, 61–3–39 [1977] provides, in part:

It shall be unlawful for any person, firm or corporation to obtain any money, services, goods or other property or thing of value by means of a check, draft or order for the payment of money or its equivalent upon any bank or other depository, knowing at the time of the making, drawing, issuing, uttering or delivering of such check, draft or order that there is not sufficient funds on deposit or credit with such bank or other depository with which to pay the same upon presentation.

. . . .

Any person who shall violate the provisions of this section, if the amount of the check, draft or order is less than two hundred dollars, shall be guilty of a misdemeanor, and, upon conviction thereof, shall be fined not more than two hundred dollars, or imprisoned not more than six months, or both fined and imprisoned. Any person who shall violate the provisions of

*of Professional Conduct.*[9] The Board has also charged Mr. Taylor with writing checks for clothing, rent and utilities from his escrow accounts, in violation of Rule 1.15(a) of the *Rules of Professional Conduct*[10] and with maintaining checking accounts in the name "G. Sylvester Taylor, P.C." when there was no legal corporation and when he could not otherwise practice as a professional corporation, in violation of Rule 7.5(a) of the *Rules of Professional Conduct.*[11]

### Count II

On July 30, 1991, Mr. Taylor contacted Apogee Computer Systems, Inc. (hereinafter. "Apogee"), of Denver, Colorado for information on a software product called LawBase. Apogee sent to Mr. Taylor a demonstration copy on August 2, 1991. On August 15, 1991, an Apogee employee spoke with Mr. Taylor by telephone and walked him through the program. On August 28, 1991, Apogee sent to Mr. Taylor a contract at his request. On September 4, 1991, Mr. Taylor signed and returned a licensing agreement to Apogee in the amount of $3,000. Apogee then sent the software product and a user manual to Mr. Taylor on September 13, 1991.

Mr. Taylor promised payment to Apogee, and its president, Philip L. Homburger, on several occasions. On December 24, 1991, Mr. Taylor provided Mr. Homburger with a Federal Express airbill number, claiming that he was sending payment that day. However, Mr. Homburger never received payment and Federal Express has no record of receiving such a package. Apogee subsequently sued Mr. Taylor for payment and obtained a default judgment against him.

The Board has charged Mr. Taylor with ordering software and refusing to return it or pay for it, in violation of Rule 8.4(c) of the *Rules of Professional Conduct.*[12]

### Count III

Mr. Taylor contacted Sid Messer of Overland Park, Kansas, operator of the Abilene Trading Company, a Negro League Baseball Museum located near Abilene, Kansas. Wishing to order merchandise from Mr. Messer, Mr. Taylor told Mr. Messer that he was an attorney who also ran a little sporting goods store. Mr. Taylor told Mr. Messer that he wanted to purchase several licensed T-shirts and baseball caps to sell in his store.

When asked if he would accept the merchandise C.O.D., Mr. Taylor agreed so long as Mr. Messer would accept a company check. Mr. Messer shipped the order to Mr. Taylor and on October 25, 1993, Mr. Taylor wrote to Mr. Messer a check in the amount

this section, if the amount of the check, draft or order is two hundred dollars or more, shall be guilty of a felony, and, if convicted thereof, shall be fined not more than five hundred dollars, or imprisoned not less than one year nor more than five years, or both fined and imprisoned.

9. Rule 8.4(b) and (c) of the *Rules of Professional Conduct* provide:

It is professional misconduct for a lawyer to:
. . . .
(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]

10. Rule 1.15(a) of the *Rules of Professional Conduct* provides:

Rule 1.15 Safekeeping Property
(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account designated as a "client's trust account" in an institution whose accounts are federally insured and maintained in the state where the lawyer's office is situated, or in a separate account elsewhere with the consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

11. Rule 7.5(a) of the *Rules of Professional Conduct* provides:

Rule 7.5 Firm Names and Letterheads
(a) A lawyer shall not use a firm name, letterhead or other professional designation that violates Rule 7.1. A trade name may be used by a lawyer in private practice if it does not imply a connection with a government agency or with a public or charitable legal services organization and is not otherwise in violation of Rule 7.1.
Generally, Rule 7.1 prohibits a lawyer from making a false or misleading communication about the lawyer or his services.

12. *See* n. 9, *supra.*

of $422.51. The check was written on The National Bank of Logan, account number 03–980–02, "G. Sylvester Taylor, Jr., P.C." This check was returned to Mr. Messer on or about November 9, 1993, because that account had been closed. Mr. Messer called Mr. Taylor at least three times in order to obtain payment. He spoke with Mr. Taylor once and to an individual named Monica on the other two occasions. Mr. Taylor neither returned the merchandise nor made any attempt to pay for it.

The Board has charged Mr. Taylor with obtaining a property in return for a worthless check, in violation of *W.Va.Code*, 61–3–39 [1977] [13] and Rule 8.4(b) and (c) of the *Rules of Professional Conduct*.[14]

### Count IV

In a prior disciplinary proceeding, *Committee on Legal Ethics v. Taylor*, 190 W.Va. 133, 437 S.E.2d 443 (1993),[15] Mr. Taylor, *inter alia*, had ordered and received a computer software package from Blue Jay Systems of Sarasota, Florida. Mr. Taylor wrote a check to Blue Jay Systems in the amount of $369. That check was returned for insufficient funds and the Committee charged Mr. Taylor with writing a check on an account which he knew lacked sufficient funds and with failing to make restitution, in violation of *W.Va.Code*, 61–3–39 [1977] and Rule 8.4(b) and (c) of the *Rules of Professional Conduct*.

On September 14, 1993, during oral argument before this Court in that case, Mr. Taylor stated that he had sent a check to Blue Jay Systems as payment for the software package when, in fact, he had made no such payment.

The Board has charged Mr. Taylor with lying to this Court, in violation of Rule 3.3(a)(1) of the *Rules of Professional Conduct*.[16]

### II

■ The standard of proof in a proceeding based on a legal ethics complaint is well

established. In syllabus point 1 of *Committee on Legal Ethics v. Six*, 181 W.Va. 52, 380 S.E.2d 219 (1989), this Court stated:

> ' "In a court proceeding initiated by the Committee on Legal Ethics of the West Virginia State Bar to annul the license of an attorney to practice law, the burden is on the Committee to prove, by full, preponderating and clear evidence, the charges contained in the Committee's complaint." Syl. Pt. 1, *Committee on Legal Ethics v. Pence*, 216 S.E.2d 236 (W.Va. 1975).' Syllabus Point 1, *Committee on Legal Ethics v. Walker*, [178] W.Va. [150], 358 S.E.2d 234 (1987).

We find that the Board has met its burden of proving the charges against Mr. Taylor by full, preponderating and clear evidence. Mr. Taylor does not challenge the Board's factual findings, as he has chosen not to take part in these proceedings. As we indicated above, though Mr. Taylor was served with the statement of charges and, subsequently, with a prehearing procedures and scheduling order, he elected neither to respond to the charges nor to participate in the prehearing conference. Similarly, Mr. Taylor did not respond to the Board's findings of fact, conclusions of law and recommendation to this Court that his license to practice law be annulled. The allegations against Mr. Taylor are, therefore, deemed admitted. In syllabus point 2 of *Committee on Legal Ethics v. Martin*, 187 W.Va. 340, 419 S.E.2d 4 (1992), we stated that "[i]n order to expedite the investigation of an ethics complaint by the Bar, an attorney's failure to respond to a request for information concerning allegations of ethical violations within a reasonable time will constitute an admission to those allegations for the purposes of the disciplinary proceeding."

■ In the most recent legal ethics proceeding instituted against Mr. Taylor, we discussed the effect of prior discipline on a subsequent disciplinary proceeding: " 'Prior

---

**13.** *See* n. 8, *supra.*

**14.** *See* n. 9, *supra.*

**15.** *See* n. 4, *supra.*

**16.** Rule 3.3(a)(1) of the *Rules of Professional Conduct* provides:

> Rule 3.3  Candor Toward the Tribunal
> (a) A lawyer shall not knowingly:
> (1) make a false statement of material fact or law to a tribunal[.]

discipline is an aggravating factor in a pending disciplinary proceeding because it calls into question the fitness of the attorney to continue to practice a profession imbued with a public trust.' Syl. pt. 5, *Committee on Legal Ethics v. Tatterson,* 177 W.Va. 356, 352 S.E.2d 107 (1986)." Syl. pt. 2, *Committee on Legal Ethics of W. Va. v. Taylor,* 190 W.Va. 133, 437 S.E.2d 443 (1993). Attorney disciplinary proceedings are not designed solely to punish the attorney, but rather to protect the public, to reassure it as to the reliability and integrity of attorneys and to safeguard its interest in the administration of justice. *See* syl. pt. 6, *Committee on Legal Ethics v. Tatterson,* 177 W.Va. 356, 352 S.E.2d 107 (1986); syl. pt. 3, *Daily Gazette v. Committee on Legal Ethics,* 174 W.Va. 359, 326 S.E.2d 705 (1984); syl. pt. 2, *In re Daniel,* 153 W.Va. 839, 173 S.E.2d 153 (1970). Mr. Taylor has been charged, *inter alia,* with violating Rule 8.4(b) and (c) of the *Rules of Professional Conduct* for writing numerous worthless checks for excessive amounts of money. This Court has previously noted the focus of Rule 8.4(b) to be on the lawyer's criminal act [17] as it reflects on his or her fitness to practice law. *Committee on Legal Ethics v. Hart,* 186 W.Va. 75, 77, 410 S.E.2d 714, 716 (1991); *Committee on Legal Ethics v. Boettner,* 183 W.Va. 136, 139, 394 S.E.2d 735, 738 (1990). Furthermore, many of these checks, written for clothing, rent and utilities, were written on checks from Mr. Taylor's escrow accounts, in violation of Rule 1.15(a) of the *Rules of Professional Conduct.* Mr. Taylor has also been charged with lying to this Court. The charges against Mr. Taylor are quite serious. Having twice been previously disciplined by this Court, he should have been aware that the penalty for his unethical behavior, if proved, would be severe. Nevertheless, though he was given notice and an opportunity to be heard,[18] Mr. Taylor neither responded to the Committee's charges nor challenged its recommendation to annul his law license. Mr. Taylor has demonstrated a pattern of ignoring the ethical standards to which he vowed to adhere when he became a member of the bar. We, therefore, adopt the Board's recommendations that Mr. Taylor's license to practice law in West Virginia be annulled and that he not be permitted to petition for reinstatement until he has made restitution to all individuals and entities to whom he tendered worthless checks.

License Annulled.

BROTHERTON, C.J., did not participate.

MILLER, Retired Justice, sitting by temporary assignment.

---

17. To our knowledge, Mr. Taylor has not been criminally charged for the acts specifically alleged in this proceeding, namely, violation of *W.Va.Code,* 61-3-39 [1977]. *See* n. 8, *supra.* Nevertheless, this Court has considered acts which were criminal in nature even though not formally charged at the time of the disciplinary proceedings. We found such acts sufficient to suspend or annul the attorney's license. *See, e.g., Committee on Legal Ethics v. Roark,* 181 W.Va. 260, 382 S.E.2d 313 (1989); *Committee on Legal*

*Ethics v. Walker,* 178 W.Va. 150, 358 S.E.2d 234 (1987).

18. *See Committee on Legal Ethics v. Boettner,* 183 W.Va. 136, 139, 394 S.E.2d 735, 738 (1990), noting a license to practice law to be a valuable right, "such that its withdrawal must be accompanied by appropriate due process procedures." (citations omitted).