IOWA SUPREME COURT BOARD OF
PROFESSIONAL ETHICS AND
CONDUCT, Complainant,

v.

Luis HERRERA, Respondent.

Nos. 01–0016.

Supreme Court of Iowa.

April 25, 2001.

Norman G. Bastemeyer and David Grace, Des Moines, for complainant.

Robert G. Tully, Des Moines, for respondent.

CADY, Justice.

The Board of Professional Ethics and Conduct charged Luis Herrera with violating numerous provisions of the Code of Professional Responsibility based on a variety of conduct in the course of the representation of a defendant in a criminal case, and for visiting with a defendant in another criminal case who was represented by counsel. The Grievance Commission found Herrera violated the Code of Professional Responsibility by neglecting a client matter, and dismissed the remaining charges. It recommended Herrera receive a public reprimand.

On our review, we agree Herrera neglected a client matter, but we also find Herrera engaged in conduct which was dishonest and reflected adversely on his fitness to practice law. We impose an indefinite suspension of not less than three months.

## I. Background Facts and Proceedings.

Luis Herrera was admitted to practice law in Iowa in 1981. He maintains a law office in Des Moines and engages in the general practice of law with an emphasis in criminal defense. He frequently represents defendants in federal drug cases.

Herrera has been publicly reprimanded on three prior occasions. In 1997, he was reprimanded for violating client trust account requirements. In 1998, he was reprimanded for neglect of a probate case and the failure to respond to inquiries by the Board. In 1999, he was reprimanded for neglect of a client matter in a dissolution action. Herrera was also suspended from practice before the United States Court of Appeals for the Eighth Circuit in 1998 for failing to file a brief in an appeal.

The evidence produced at the hearing before the Grievance Commission centered

on Herrera's conduct in two criminal cases. We will discuss each case separately.

### 1. Penuelas Case.

Herrera represented Carlos Penuelas Santos (Penuelas). Penuelas was charged in federal court with various drug offenses and was represented by another lawyer prior to the time Herrera filed his appearance in the case on October 30, 1997. The former attorney had negotiated a plea agreement in the case and Penuelas had entered a plea of guilty and was awaiting sentencing. Following the sentencing hearing on January 9, 1998, Penuelas was sentenced to a five-year prison term. Herrera filed a notice of appeal from the sentence on January 16, 1998.

On February 2, 1998, Penuelas paid Herrera $5000 by endorsing a check to him in that amount. Herrera deposited the check in his personal account. He did not deposit the check in his trust account because he believed he had earned the fee by the time it was received.

Herrera failed to pursue the appeal in a timely manner. He failed to pay the required filing fee and failed to file a brief within the required period of time. The clerk of court for the Eighth Circuit Court of Appeals eventually issued an order for Penuelas to show cause why his appeal should not be dismissed for failure to prosecute. Shortly after this time, Herrera was suspended from practicing before the Eighth Circuit for his dilatory conduct in an appeal in another case. Nevertheless, Herrera had his paralegal and another lawyer write the required brief, which was eventually filed on July 13, 1998, under his signature. The paralegal signed Herrera's name to the brief. The brief was subsequently stricken from the record because Herrera was unauthorized to practice before the court, and Penuelas was given the option of filing another brief on his own or retaining new counsel.

On September 8, 1998, Penuelas wrote Herrera. Penuelas requested the $5000 fee be refunded to him, and he threatened to report Herrera's conduct to the "Bar Association." Herrera responded to the letter by sending Penuelas a check from his office account in the amount of $4300. The check, however, was returned for insufficient funds. Herrera then issued a second check for $4400. This check was also returned for insufficient funds.

The Board subsequently initiated an audit of Herrera's trust account records. The auditor assigned to the case, however, was delayed in his efforts to meet with Herrera for nearly a month due to Herrera's personal and business schedule. Herrera was also slow in producing the records and documents requested by the auditor. At the same time, the auditor was attempting to close the investigation in a prompt manner before he was expecting to leave to spend the winter months in Arizona. Herrera declared on his 1999 client security questionnaire and statement that all retainers had been deposited in his trust account.

### 2. Lopez–Santos Case.

On November 16, 1998, four defendants were indicted in federal court on drug charges. Each was represented by an attorney. The government had targeted one of the defendants, Fernando Lopez–Rayo (Lopez), as the ringleader, and another of the defendants, Francisco Santos–Vizcaino (Santos), was considering a plea bargain.

On December 2, 1998, Herrera was asked by a third person to meet with Lopez, who was in jail. Following the meeting, Herrera notified Lopez's attorney and the United States Attorney that he believed he would be representing Lopez, and requested certain documents from the

United States Attorney. On December 5, Herrera returned to the jail and again met with Lopez. During this meeting, Lopez told Herrera that Santos also wanted to talk to him. Herrera then met with Santos. Herrera indicated both men wanted to hire him to represent them, and the conversation was limited to the subject of employment and the payment of a fee. However, no arrangements were subsequently finalized and Herrera never entered an appearance in either case. Nevertheless, the attorneys representing the two defendants were upset once they learned Herrera had met with their clients.

## II. Board Complaint.

The Board charged Herrera with a variety of violations of the rules of professional responsibility. It claimed Herrera neglected the appeal in the Penuelas case in violation of DR 6–101(A)(3) (neglect of a client matter) and failed to supervise his paralegal in the preparation and filing of the brief in violation of DR 3–104(D) (supervision of work by nonlawyer personnel). It further claimed that the $5000 paid to Herrera by Penuelas was a retainer which Herrera failed to place in his trust account and maintain appropriate records, all in violation of DR 9–102(A) (trust accounts) and DR 9–103(A) (record keeping). It claimed the insufficient funds checks issued by Herrera violated DR 9–102(B)(4) (failure to deliver client funds) and DR 1–102(A)(4), (5), and (6) (conduct which is dishonest, prejudicial, and adversely reflects on fitness to practice law). The Board also claimed Herrera failed to cooperate with the Client Security Commission investigator in violation of Court Rule 121.4(a)(3). It also claimed Herrera submitted false answers to the trust account questions on his client security questionnaire in violation of DR 1–102(A)(4) (conduct involving misrepresentation). Final-

ly, it claimed Herrera violated DR 7–104(A)(1) (communicating with another's client) when he visited with Santos after he visited with Lopez.

## III. Commission Decision.

The commission found Herrera neglected the appeal in the Penuelas case in violation of DR 3–104(D) and DR 6–101(A)(3), but dismissed the remaining counts of the complaint. It found the $5000 paid to Herrera by Penuelas was not a retainer, but a fee which had been fully earned by the time Herrera received it. Accordingly, the Board found Herrera had no obligation to place the check in his trust account. The commission also dismissed the charges relating to the insufficient funds checks. It found the issue was not adequately pled in the complaint. The commission also dismissed the failure to cooperate complaint. It found the Client Security Commission did not cooperate with Herrera to accommodate his busy schedule. Finally, the commission found Herrera did not violate DR 7–104(A)(1) by visiting with Santos because Herrera was not representing Lopez at the time.

The commission recommended Herrera be publicly reprimanded for neglect of a client matter. It recommended dismissal of the remaining counts.

## IV. Scope of Review.

Our review is de novo. Ct. R. 118.10. We give respectful consideration to the recommendations of the commission, but ultimately decide the appropriate discipline under the specific facts of each case. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Beckman,* 557 N.W.2d 94, 95 (Iowa 1996). The conduct must be proven by a convincing preponderance of the evidence. *Id.*

## V. Violations.

### 1. Neglect.

■■ We agree with the commission that the actions and inactions by Herrera following the filing of the notice of appeal in the Penuelas criminal case support a finding of neglect of a client matter in violation of DR 6–101(A). Herrera ignored several deadlines and failed to properly respond to the notices from the clerk of court. Furthermore, after he was prohibited from filing pleadings and briefs with the Eighth Circuit Court of Appeals, he neglected to make all the necessary arrangements for another attorney to file the required brief. He also utilized his paralegal to assist in the preparation and filing of the brief, but failed to supervise the work performed by the paralegal in violation of DR 3–104(D). It is uncertain if his neglect and lack of supervision resulted in any prejudice to his client, but such a result is unnecessary. *See Comm. on Prof'l Ethics & Conduct v. Gill,* 479 N.W.2d 303, 306 (Iowa 1991). The procrastination and sloppy behavior engaged in by Herrera adversely affects the public's confidence in the profession. *See id.; see also ABA/BNA Lawyers' Manual on Professional Conduct* 31:402–403 (1997).

### 2. Insufficient Funds Checks.

■ We next consider the claim involving the two checks Herrera wrote which were returned for insufficient funds. At the outset, we find the charge was adequately pled in the complaint. Although the Board primarily alleged the conduct violated DR 9–102(B)(4) for failing to pay funds requested by a client, the complaint also alleged the conduct was dishonest in violation of DR 1–102(A)(4). Moreover, the prehearing brief filed by the Board unequivocally asserted that Herrera's conduct in issuing the checks to his client without sufficient funds in the accounts

from which the checks were drawn "was dishonest, prejudicial to the administration of justice, and adversely reflected on his fitness to practice law, contrary to DR 1–102(A)(4), (5), and (6)." We conclude Herrera had sufficient notice of the specific complaint.

■ The issuance of an insufficient funds check by a lawyer can constitute a violation of our rules of professional responsibility. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Walters,* 603 N.W.2d 772, 776–77 (Iowa 1999). If the conduct is more than a mistake or mere negligence, it violates DR 1–102(A)(4) (dishonest conduct). *See Comm. on Prof'l Ethics & Conduct v. Bitter,* 279 N.W.2d 521, 526 (Iowa 1979) (DR 1–102 does not apply to conduct involving negligence); *see also In re Pokorny,* 453 N.W.2d 345, 347 (Minn.1990) (issuance of insufficient funds check followed by failure to issue a substitute check); *Comm. on Legal Ethics v. Taylor,* 187 W.Va. 39, 415 S.E.2d 280, 283 (1992) (attorney must either know check was worthless when written or fail to make check good after knowledge of insufficient funds). Additionally, an insufficient funds check issued in connection with the practice of law can amount to conduct prejudicial to the administration of justice and can adversely reflect on an attorney's fitness to practice law in violation of DR 1–102(A)(5) and (6). *See Walters,* 603 N.W.2d at 777; *Taylor,* 415 S.E.2d at 283.

■ Although Herrera may not have been obligated to return the fee as requested by his client, the evidence is clear that Herrera agreed to do so, or at least made the decision to return a large portion of the fee the client had paid by issuing a check on his office account to the client. In issuing the check, Herrera was bound by DR 1–102(A) to do so in an honest manner, as well as in a manner that would

not be prejudicial to the administration of justice or reflect adversely on his fitness to practice law.

The circumstances of this case clearly reveal Herrera's conduct was dishonest. The bank account from which the first check was drawn was perpetually overdrawn and never contained close to enough funds for the bank to pay the check during the time it was issued. Furthermore, Herrera did not maintain a register or balance for either account, and was hoping to receive a fee from another client to cover the second check.

█ While the issuance of the first insufficient funds check could conceivably be excused as inadvertence or neglect, the failure to make the check good and the subsequent issuance of a second insufficient funds check from a separate account supports a finding that Herrera's conduct was dishonest. Furthermore, the matter relates directly to the practice of law and the operation of his law office. Consequently, Herrera's conduct was prejudicial to the administration of justice and reflected adversely on his fitness to practice law. We conclude Herrera violated DR 1–102(A)(4), (5), and (6). The public perception of the legal profession and lawyers is damaged when lawyers knowingly issue insufficient funds checks. *Taylor*, 415 S.E.2d at 283.

### 3. Communication with Another Lawyer's Client.

█ Generally, a lawyer representing a client is barred from any representational contact with a party known to be represented by another lawyer.[1] *See* Charles W. Wolfram, *Modern Legal Ethics* § 11.6.2, at 611 (1986) [hereinafter Wolfram]. This rule is followed in nearly every jurisdiction in the nation. *See In re News America Publ'g, Inc.*, 974 S.W.2d 97, 100 n. 3 (Tex.App.1998);Gregory G. Sarno, Annotation, *Communication with Party Represented by Counsel as Ground for Disciplining Attorney*, 26 A.L.R.4th 102, 108–12 (1983 & Supp.1999). The specific Iowa rule is found in DR 7–104(A)(1), and provides as follows:

(A) During the course of representing a client a lawyer shall not:

(1) Communicate or cause another to communicate on the subject of the representation with a party known to be represented by a lawyer in that matter except with the prior consent of the lawyer representing such other party or as authorized by law.

The rule exists to protect the represented person from "the supposed imbalance of legal skill and acumen between the lawyer and the party litigant." *Massiah v. United States*, 377 U.S. 201, 211, 84 S.Ct. 1199, 1205, 12 L.Ed.2d 246, 253 (1964) (White, J., dissenting); *see State v. Miller*, 600 N.W.2d 457, 463 (Minn.1999). It promotes

---

1. The origin of this rule can be traced to an 1836 treatise, which stated "I will never enter into any conversation with my opponent's client, relative to his claim or defence, except with the consent, *and* in the presence of his counsel." John Leubsdorf, *Communicating with Another Lawyer's Client: The Lawyer's Veto and the Client's Interests*, 127 U. Pa. L.Rev. 683, 684 & n. 6 (1979) (quoting 2 David Hoffman, *A Course of Legal Study Addressed to Students and the Profession Generally* 711 (2d ed. Baltimore 1836)) [hereinafter Leubsdorf]; *see State v. Miller*, 600 N.W.2d 457, 463 n. 5 (Minn.1999); *In re News America Publ'g, Inc.*, 974 S.W.2d 97, 100 n. 3 (Tex.App.1998). This rule became generally accepted during the early part of the twentieth century. *See* Leubsdorf, at 684–85; *see also Miller*, 600 N.W.2d at 463 n. 5. The rule became part of the American Bar Association's (ABA) canons of ethics in 1908, and ultimately became a part of the ABA Code of Professional Responsibility and the model rules of professional conduct. Leubsdorf, at 685; *see Miller*, 600 N.W.2d at 463 n. 5.

the integrity of the attorney-client relationship and serves to prevent a variety of overreaching. *See Miller,* 600 N.W.2d at 463; *see also* Leubsdorf, at 686–88 (listing various rationales for the rule).

■ The threshold requirement of the rule limits the prohibition to communications during the course of representing a client. DR 7–104(A)(1). Additionally, the rule applies only to communications "on the subject of the representation with a party known to be represented by a lawyer in that matter." *Id.* On the other hand, the rule does not exist to prohibit a lawyer from consulting with a prospective client concurrently represented by another lawyer to discuss complaints or concerns. Wolfram § 11.6.2, at 612; *see News America Publ'g, Inc.,* 974 S.W.2d at 102. · The status of a person as a client does not place that person into bondage. Wolfram § 11.6.2, at 612. Instead, the language of the rule reveals that the prohibition is limited to efforts by lawyers in their representation of their clients to drive a wedge between other lawyers and their clients. *Id.*

Herrera asserts the rule cannot apply to him because he did not actually represent either defendant, and was not representing Lopez at the time he met with Santos. Instead, he claims he met with the two defendants only because they were dissatisfied with their lawyers and wanted him to represent them.

■ We have not previously considered the phrase "[d]uring the course of representing a client" under DR 7–104(A). Nevertheless, we recognize that "[c]ommunications in the course of preliminary discussion[s] with a view to employing [a] lawyer are privileged [even] though the employment is ... not [ultimately] accepted." Edward W. Cleary et al., *McCormick on Evidence* § 88, at 179 (2d ed.1972); *see* Wolfram § 6.3, at 251. Moreover, the ra-

tionale for the no-contact rule would apply equally to a lawyer in an existing attorney-client relationship as it would to a lawyer in a pending attorney-client relationship. Our system of justice would suffer immeasurably if a lawyer could meet with multiple parties to a case before selecting a party to represent. Thus, we believe a lawyer can be in the course of representing a client under DR 7–104(A) prior to the time in which the terms of the representation are finalized. Applying this principle to this case, we conclude Herrera was in the course of representing Lopez under DR 7–104(A)(1) at the time he met with Santos.

■ Notwithstanding, the rule only prohibits communications on the subject of the representation. DR 7–104(A)(1). In this case, the communications between Herrera and Santos did not extend to the subject of the representation between Santos and his existing lawyer, but to the subject of new representation. The discussion between Herrera and Santos was confined to inquiries to determine if Herrera would represent the defendants in the criminal case and the fee which would be necessary to secure the representation. For sure, this type of contact between a lawyer and a represented party presents a very delicate issue, and the line between communications pertaining to representing another in a criminal case and the criminal case itself is extremely fine. The safe course of conduct for a lawyer would be to abstain from any communications under these circumstances. Nevertheless, the evidence at the hearing failed to show the communications between Herrera and Santos extended to any matters covered within the subject of the representation between Santos and his existing counsel. Therefore, even though Herrera was in the course of representing Lopez for the purpose of DR 7–104(A)(1) at the time he met

with Santos, the Board failed to prove the communications between Herrera and Santos fell within the scope of the rule.

### 4. Other Charges.

We agree with the commission that the Board failed to prove the remaining alleged violations by a convincing preponderance of the evidence. Although the circumstances of the fee arrangement with Penuelas appeared suspicious, and the record keeping maintained by Herrera was sloppy, if not nonexistent, the evidence failed to support the claimed violations.

### VI. Discipline.

■ The sanction to result in an attorney disciplinary action rests with the particular facts of each case. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Carr,* 588 N.W.2d 127, 129 (Iowa 1999). In determining the sanction under the circumstances of each case, we consider the nature of the violations, "the need for deterrence, protection of the public, maintenance of the reputation of the bar as a whole, and the [violator's] fitness to practice law." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lemanski,* 606 N.W.2d 11, 14 (Iowa 2000).

■ It is apparent that Herrera approaches the practice of law fast and loose. This is not only revealed by the circumstances of this case, but also by the three prior reprimands, as well as his suspension from the practice of law before the Eighth Circuit Court of Appeals. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Morris,* 604 N.W.2d 653, 656 (Iowa 2000) (court may consider attorney's prior disciplinary history). Unfortunately, the prior reprimands have done little to change Herrera's disposition. Equally unfortunate, Herrera has now not only engaged in conduct which mirrors the type of behavior which resulted in the prior disciplinary

actions, but he has engaged in conduct which is dishonest and, by its very nature, adversely reflects on his ability to practice law. We can no longer consider a public reprimand to be a viable sanction.

For most lawyers, fortunately, a public reprimand represents a wake-up call. For other lawyers, regrettably, a reprimand only perpetuates unethical conduct by creating a false sense of immunity. Herrera, unfortunately, has failed to use his prior reprimands as a wake-up call.

Considering all the circumstances and the relevant facts of this case, we indefinitely suspend the license of Luis Herrera to practice law with no possible reinstatement for three months following the filing of this opinion. The suspension shall apply to all aspects of the practice of law. *See* Ct. R. 118.12. Any application for reinstatement shall be governed by Court Rule 118.18. Costs are assessed to Herrera. *See* Ct. R. 118.22.

**LICENSE SUSPENDED.**