IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2015 Term

_____

Nos. 13-0508 &
13-1148

_____

FILED
February 5, 2015
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

LAWYER DISCIPLINARY BOARD,
Petitioner

v.

RONALD S. ROSSI,
A Member of the West Virginia State Bar,
Respondent

_____

Lawyer Disciplinary Proceeding

LAW LICENSE SUSPENDED AND OTHER SANCTIONS

_____

Submitted: January 13, 2015
Filed: February 5, 2015

Jessica H. Donahue Rhodes, Esq.          Ronald S. Rossi, Esq.
Lawyer Disciplinary Counsel               Martinsburg, West Virginia
Charleston, West Virginia                 *Pro Se*
Counsel for the Petitioner

JUSTICE KETCHUM delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.      "A *de novo* standard applies to a review of the adjudicatory record made before the Committee on Legal Ethics of the West Virginia State Bar [currently, the Hearing Panel Subcommittee of the Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the Committee's recommendations while ultimately exercising its own independent judgment.  On the other hand, substantial deference is given to the Committee's findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record." Syllabus Point 3, *Committee on Legal Ethics of the West Virginia State Bar v. McCorkle*, 192 W.Va. 286, 452 S.E.2d 377 (1994).


2.      "In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession."  Syllabus Point 3, *Committee on Legal Ethics of the West Virginia State Bar v. Walker*, 178 W.Va. 150, 358 S.E.2d 234 (1987).

Justice Ketchum:

This is a consolidated lawyer disciplinary proceeding brought against Ronald S. Rossi by the Office of Disciplinary Counsel ("the ODC"). The ODC instituted two separate disciplinary proceedings against Mr. Rossi after six of his former clients filed ethics complaints against him. A Hearing Panel Subcommittee of the Lawyer Disciplinary Board ("Board") determined that Mr. Rossi committed multiple violations of the *West Virginia Rules of Professional Conduct*, including (1) failing to act with reasonable diligence and promptness in representing his clients, (2) failing to communicate with his clients, (3) failing to return client files in a timely fashion, (4) repeatedly failing to respond to the ODC's requests for information, (5) failing to contact the Lawyer Assistance Program after being directed to do so, (6) engaging in conduct that was deceitful, and (7) engaging in conduct that was prejudicial to the administration of justice. The Board recommended that Mr. Rossi be given two one-year suspensions from the practice of law and recommended that the two one-year suspensions run concurrent to each other. In effect, the Board recommends that Mr. Rossi be suspended from the practice of law for one year.

Upon review, this Court finds that clear and convincing evidence exists to support the Board's finding that Mr. Rossi committed multiple violations of the *West Virginia Rules of Professional Conduct*. However, we disagree with the Board's recommendation that an effective one-year suspension is sufficient discipline for the substantial misconduct involved in this case. We find, instead, that Mr. Rossi's

1

misconduct warrants a three-year suspension from the practice of law. We adopt the Board's remaining recommended sanctions in full and impose two additional sanctions.

## I.

### FACTUAL BACKGROUND & CHARGED VIOLATIONS

Mr. Rossi is a lawyer practicing in Martinsburg, West Virginia. He was admitted to the West Virginia State Bar in October 1997. As such, Mr. Rossi is subject to the disciplinary jurisdiction of this Court. Mr. Rossi faces two separate disciplinary cases. The first case, no. 13-0508, was filed on May 20, 2013. The second case, no. 13-1148, was filed on November 14, 2013. In sum, six separate complaints against Mr. Rossi form the basis of the charges brought against him in these two consolidated cases.[1] All six complaints were filed against Mr. Rossi while he maintained a solo law practice. We begin by reviewing each of the six complaints.

### A. Count 1 - The Williams Complaint

Hayden Williams paid Mr. Rossi $2,000.00 to represent him in a lawsuit involving rental property. Mr. Williams alleged that he was not receiving rental monies due to him. Further, Mr. Williams was attempting to regain possession of the rental property. Because Mr. Williams was unable to collect rent on the subject property during

---

[1] The charges in case no. 13-0508 resulted from five separate complaints filed against Mr. Rossi. The charges in case no. 13-1148 arose from one complaint filed against Mr. Rossi.

the pendency of the lawsuit, he sought a speedy resolution of the case. However, when Mr. Williams attempted to contact Mr. Rossi and obtain information about the progress of his case, Mr. Rossi failed to communicate with him. Mr. Williams stated, "[W]e tried every way that we could to contact him, unsuccessfully. We went to his office twelve, fifteen times. We went there during the day. We went there in the afternoon. We phoned and phoned and phoned and no answer." Approximately ten months after he had retained Mr. Rossi, Mr. Williams went to the Martinsburg courthouse and discovered that Mr. Rossi had not filed a lawsuit on his behalf. Thereafter, Mr. Williams filed an ethics complaint against Mr. Rossi with the ODC. Mr. Williams also sent a letter to Mr. Rossi, firing him and requesting a return of all of the documents he had provided to Mr. Rossi, as well as a refund of the $2,000.00 retainer.

The ODC sent a letter to Mr. Rossi on July 12, 2011, asking for a response to Mr. Williams's complaint. Mr. Rossi did not respond to the ODC. The ODC sent a second letter to Mr. Rossi on August 10, 2011, again asking for a response to the complaint. Mr. Rossi replied, by letter dated August 31, 2011, and admitted that he had failed to communicate with Mr. Williams. Mr. Rossi's letter further stated that he was experiencing a "deep depression" and that he had started therapy. Mr. Rossi's letter also stated that he was seeking employment "where I would not have to deal with issues related to running a business and practicing law," but had failed to obtain such employment.

3

Mr. Rossi subsequently refunded the $2,000.00 retainer to Mr. Williams. However, Mr. Rossi failed to return the client file to Mr. Williams. The ODC sent two letters to Mr. Rossi instructing him to return the client file to Mr. Williams.[2] Mr. Williams hired another attorney who filed a lawsuit on his behalf and resolved his rental property issue within two months. Mr. Williams stated that Mr. Rossi's failure to file the lawsuit resulted in him losing approximately $7,000.00 in rental income.

The Board determined that Mr. Rossi failed to diligently work on Mr. Williams's case and failed to communicate with Mr. Williams about his case in violation of Rules 1.3,[3] 1.4(a) and 1.4(b)[4] of the *Rules of Professional Conduct*. Further, the Board found that Mr. Rossi violated Rule 1.16(d)[5] of the *Rules of Professional Conduct* by failing to return Mr. Williams's client file. Finally, the Board found that Mr. Rossi

---

[2] Mr. Rossi failed to respond to the ODC's first letter instructing him to return the client file.

[3] Rule 1.3 of the *Rules of Professional Conduct* provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

[4] Rules 1.4(a) and 1.4(b) of the *Rules of Professional Conduct* are as follows: "(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information. (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

[5] Rule 1.16(d) of the *Rules of Professional Conduct* states, in relevant part: "(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as . . . surrendering papers and property to which the client is entitled[.]"

4

violated Rule 8.1(b)[6] by failing to follow a directive issued by the Investigative Panel of the Lawyer Disciplinary Board[7] and by failing to respond to correspondence from the ODC.

## B. Count 2 – The Pike Complaint

Jon A. Pike retained Mr. Rossi to represent him in a "lemon law" case. Mr. Pike filed a complaint against Mr. Rossi with the ODC on August 22, 2011, alleging that Mr. Rossi had failed to communicate with him about his case. After receiving Mr. Pike's complaint, the ODC directed Mr. Rossi to communicate with Mr. Pike within ten days.

---

[6] The relevant portion of Rule 8.1(b) of the *Rules of Professional Conduct* provides:

> [A] lawyer in connection with . . . a disciplinary matter, shall not: . . .

> (b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority[.]

[7] On December 14, 2012, the Investigative Panel issued an admonishment to Mr. Rossi for violations of Rules 1.3, 1.4(a), 1.4(b) and 8.1(b) of the *Rules of Professional Conduct* in connection with his representation of Mr. Williams. The Panel also directed Mr. Rossi to report his depression issues to the Lawyer Assistance Program and verify that he had done so within thirty days. Mr. Rossi failed to comply with this directive. Due to this failure, the ODC sent Mr. Rossi a letter directing him to contact the Lawyer Assistance Program and to provide verification that he had done so by February 11, 2013. Mr. Rossi did not respond to this letter. The ODC sent Mr. Rossi a second letter requesting verification that he had contacted the Lawyer Assistance Program. Again, Mr. Rossi failed to respond to the ODC. Because Mr. Rossi failed to respond to the Investigative Panel's directive, the ODC prepared a motion to reopen the Williams complaint, which was granted by the Investigative Panel.

Mr. Rossi complied with this directive. However, Mr. Pike filed a second complaint against Mr. Rossi on September 26, 2012, alleging that Mr. Rossi had again failed to respond to his telephone calls, text messages and emails for over two months. Mr. Pike requested that Mr. Rossi return all of the records relating to the case to him. Mr. Pike subsequently obtained a new lawyer who promptly settled his "lemon law" case. Mr. Pike described the harm he suffered as a result of Mr. Rossi's failure to communicate with him and failure to diligently work on his case as follows:

> Well, it's frustration more than anything, with the car dealer and with the legal system taking a long time and not knowing what's going on. . . . There was a lot of frustration. There was a lot of my own time and leg work that I put in trying to resolve the case. I have no knowledge of the legalities and so that's why, you know, I got a lawyer. Besides frustration and time, and there is a possibility of financial losses, yeah, but it was frustrating more than anything else.

The ODC sent a letter to Mr. Rossi, requesting a response to the allegations contained in Mr. Pike's September 26, 2012, complaint. Mr. Rossi did not respond to the ODC's request. The ODC sent two additional letters to Mr. Rossi (in January 2013 and February 2013), requesting a response to Mr. Pike's complaint. Mr. Rossi did not respond to either of these ODC letters.

The Board determined that Mr. Rossi violated Rules 1.3 (duty to act with reasonable diligence, *see* footnote 3, *supra*) and 1.4(a) (duty to keep the client reasonably informed, *see* footnote 4, *supra*) in connection with his representation of Mr. Pike. Further, the Board found that Mr. Rossi's numerous failures to respond to the ODC constituted a violation of Rule 8.1(b) (*see* footnote 6, *supra*).

6

## C. Count 3 – The Edwards Complaint

Steven Edwards paid Mr. Rossi $1,500.00 on April 20, 2011, to represent him in a divorce matter. Mr. Edwards filed a complaint against Mr. Rossi with the ODC on February 3, 2012, alleging that Mr. Rossi had failed to take any action in his case and that Mr. Rossi had failed to communicate with him about the case. Prior to filing his complaint with the ODC, Mr. Edwards sent Mr. Rossi the following email in December 2011:

> I wrote you a check for the amount of $1,500.00 on April 20, 2011 as you requested for a retainer fee. You have not provided any services for me yet. I have left numerous messages on your cell and business phones and you refuse to return my calls. I have never heard of a divorce taking 9 months, especially when we [Mr. Edwards and his spouse] already have an agreement wrote up and there is nothing to contest. I requested a refund via a phone message and again I have not heard from you. I need this refund so I can hire someone who will provide this service for me. If I don't hear from you by tomorrow evening I am filing a complaint with the WV State Bar Association.

After receiving Mr. Edwards's complaint, the ODC sent letters to Mr. Rossi in February and March 2012, requesting that he respond to the complaint. Mr. Rossi failed to respond to the ODC's February and March letters. Mr. Rossi eventually responded to Mr. Edwards's complaint by letter dated May 1, 2012, stating that he had worked on the case and that he met with Mr. Edwards on several occasions. Despite his assertion that he had performed work on the case, Mr. Rossi agreed to refund the $1,500.00 retainer fee to Mr. Edwards.

On December 14, 2012, the Investigative Panel of the Board issued Mr. Rossi an admonishment for failing to respond to the ODC's repeated requests that he respond to Mr. Edwards's complaint, in violation of Rule 8.1(b) of the *Rules of Professional Conduct* (see footnote 6, *supra*).[8]

## D. Count 4 – The Ashby Complaint

Jeanette Renee Ashby filed a complaint against Mr. Rossi on June 7, 2012. Ms. Ashby stated that she retained Mr. Rossi to represent her son who had been charged with DUI second offense, possession with intent to distribute, and malicious battery and assault. Ms. Ashby claimed that she paid Mr. Rossi a $1,500.00 retainer fee. Ms. Ashby's complaint states that Mr. Rossi failed to attend her son's DUI second offense hearing and that her son had to represent himself at this hearing. The complaint further states that Ms. Ashby had difficulty contacting Mr. Rossi and that she eventually had to hire a different lawyer to represent her son. The complaint concludes with Ms. Ashby asking for a refund of the $1,500.00 she paid to Mr. Rossi.

The ODC forwarded Ms. Ashby's complaint to Mr. Rossi and requested a response. Mr. Rossi responded to the allegations, stating that he did not receive notice of the DUI hearing, but asserted that the charge was resolved at a later hearing that he had

---

[8] While Mr. Rossi was initially given an admonishment in the Edwards complaint, the complaint was subsequently reopened after Mr. Rossi failed to follow the directive of the Investigative Panel to report to the Lawyer Assistance Program (*see* footnote 7, *supra*).

8

attended. Mr. Rossi also stated that he worked approximately 20.5 hours on the Ashby case.

Ms. Ashby responded to Mr. Rossi's reply and reiterated her original allegations. She also informed the ODC that she had participated in a fee dispute mediation in which Mr. Rossi agreed to refund $300.00 to her. After receiving this reply from Ms. Ashby, the ODC wrote to Mr. Rossi, asking him if he had refunded $300.00 to Ms. Ashby and if so, asking why he agreed to this refund. Mr. Rossi failed to respond to the ODC's request. The ODC sent a second letter to Mr. Rossi inquiring about the $300.00 refund. Once again, Mr. Rossi failed to respond to the ODC's request.

Because of his failure to respond to the ODC's requests, the Board found that Mr. Rossi violated Rule 8.1(b) of the *Rules of Professional Conduct* (*see* footnote 6, *supra*).

### E. Count 5 – The Vogtman Complaint

Roxanne Coburn Vogtman filed a complaint on behalf of her father, Jennings B. Coburn, Sr., with the ODC on August 8, 2012, alleging that Mr. Rossi had failed to communicate with her father and had failed to take any action in his case. Ms. Vogtman stated that Mr. Coburn sustained a brain injury after slipping and falling on ice in front of a grocery store in February 2010. After her father retained Mr. Rossi to file a lawsuit on his behalf, Ms. Vogtman alleged that Mr. Rossi performed sparse work on the case and that he did not respond to Mr. Coburn's attempts to communicate with him. Upon learning that Mr. Rossi was not communicating with her father and was not

9

returning his phone calls, Ms. Vogtman placed a call to Mr. Rossi's office and left a voicemail message under the guise of being a new client. Mr. Rossi returned Ms. Vogtman's phone call within five minutes. After informing him that she was Mr. Coburn's daughter, Ms. Vogtman asked Mr. Rossi why he was not communicating with her father about his case. Ms. Vogtman alleges that Mr. Rossi responded by telling her that he had been busy and had been on vacation. Ms. Vogtman also asked Mr. Rossi if he had filed the lawsuit on behalf of her father and he told her that he had not. Mr. Coburn subsequently fired Mr. Rossi in June 2012, and requested that Mr. Rossi return his client file.

The ODC forwarded Ms. Vogtman's complaint to Mr. Rossi by letter dated August 10, 2012, requesting a response to her allegations. Mr. Rossi did not respond. The ODC sent a second letter requesting a response on September 24, 2012. Mr. Rossi responded to this letter, stating that he had performed work on the case and had communicated with Mr. Coburn. The ODC sent Mr. Rossi letters in January and February of 2013, requesting that he explain what actions he had taken on Mr. Coburn's behalf over the two years that he allegedly worked on his case. Mr. Rossi did not respond to either of these requests.

The Board determined that Mr. Rossi failed to work on Mr. Coburn's case and failed to communicate with Mr. Coburn about his case, in violation of Rules 1.3, 1.4(a) and 1.4(b) of the *Rules of Professional Conduct* (*see* footnotes 3 and 4, *supra*). Further, the Board found that Mr. Rossi violated Rule 1.16(d) by failing to promptly

10

return Mr. Williams's client file (*see* footnote 5, *supra*). Finally, the Board found that Mr. Rossi violated Rule 8.1(b) by failing to respond to requests for information from the ODC (*see* footnote 6, *supra*).

### F. Count 6 – The Davis Complaint (case no. 13-1148)

Glenn R. Davis is the Chief Executive Officer of Comverge, Inc., a telecommunications firm located in Virginia Beach, Virginia. Comverge, Inc. was named as a co-defendant in a lawsuit filed in Jefferson County, West Virginia.[9] Mr. Davis retained Mr. Rossi to represent Comverge, Inc. on February 22, 2012, and paid him a retainer of $1,500.00. Mr. Rossi told Mr. Davis that he would be filing a motion to dismiss on behalf of Comverge, Inc. and that he would keep Mr. Davis updated on the status of the lawsuit. Mr. Davis testified that Mr. Rossi told him "he had done a lot of research [on the case and] had filed stuff" on Comverge, Inc.'s behalf.

On April 25, 2012, the circuit court entered a default judgment against Comverge, Inc. The circuit court's order states, "Comverge, Inc. has not appeared, or filed a Responsive Pleading or filed an Answer or in any other manner appeared to defend this matter. . . . George Street, LLC is hereby granted Judgment against Comverge, Inc. in the amount of $30,000.00[.]"

---

[9] The lawsuit was styled *CSC Leasing Company v. 201 North George Street, LLC and Comverge, Inc.*, civil action no. 10-C-451.

11

After Mr. Davis became aware that the circuit court had entered this order, he called the Jefferson County clerk's office and was informed that Mr. Rossi had not filed any motions on Comverge Inc.'s behalf and had made no appearance of counsel in the matter. Mr. Davis's complaint to the ODC described his attempts to contact Mr. Rossi after receiving a copy of the default judgment order:

> [S]ince April 25, 2012, I have only been able to reach Mr. Rossi once on the week of May 7, 2012. At that time, Mr. Rossi informed my assistant that he was traveling, but was back into town. He stated that he was going to look into the summary judgment and call us back the following day. He failed to do so, and we have placed over 50 emails and calls to Mr. Rossi since then with no response from him or anyone in his office.

On August 5, 2013, Mr. Davis filed a complaint against Mr. Rossi with the ODC. The ODC forwarded the complaint to Mr. Rossi in August 2013 and asked him to respond to the charges. Mr. Rossi did not respond. The ODC sent a second letter to Mr. Rossi in September 2013, again asking for a response. Mr. Rossi did not respond to the ODC's September letter.

The Board determined that Mr. Rossi failed to work on Mr. Davis's case and failed to communicate with Mr. Davis about his case, in violation of Rules 1.3, 1.4(a) and 1.4(b) of the *Rules of Professional Conduct* (*see* footnotes 3 and 4, *supra*). Further, the Board found that Mr. Rossi violated Rule 3.2[10] by engaging in "dilatory

---

[10] Rule 3.2 of the *Rules of Professional Conduct* states, "[a] lawyer shall make reasonable efforts to expedite litigation consistent with the interest of the client."

practices and failing to make reasonable efforts consistent with Mr. Davis' objective." The Board found that Mr. Rossi violated Rule 8.1(b) by failing to respond to requests for information from the ODC (*see* footnote 6, *supra*). Finally, the Board found that Mr. Rossi violated Rule 8.4(c) and 8.4(d)[11] by falsely informing Mr. Davis "on his work and intent in the case."

### G. Disposition of Disciplinary Proceedings

Based on the six complaints filed against Mr. Rossi, the Board found that he committed multiple rule violations including his failure to (1) communicate with clients, (2) keep his clients reasonably informed about their cases, (3) act diligently in representing his clients, (4) respond to the ODC's requests for information, and (5) follow a directive issued by the Investigative Panel of the Lawyer Disciplinary Board. Mr. Rossi appeared at a hearing the Board held on the six complaints filed against him and acknowledged that he had violated the *Rules of Professional Conduct*.[12] Mr. Rossi also expressed remorse for committing these rule violations and stated, "I know that I failed as a sole practitioner. I know that I did, and that's nobody's fault but mine."

---

[11] Rule 8.4(c) and 8.4(d) of the *Rules of Professional Conduct* states, "[i]t is professional misconduct for a lawyer to: . . . (c) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation. (d) Engage in conduct that is prejudicial to the administration of justice."

[12] Mr. Rossi did not generally dispute the allegations contained in the complaints of Hayden Williams, Jon Pike, Steven Edwards or Glenn Davis. Mr. Rossi did, however, dispute the allegations contained in the complaints of Jeanette Ashby and Roxanne Vogtman.

In considering the punishment to be imposed, the Board found that Mr. Rossi violated duties to his clients, to the legal system and to the legal profession. Further, the Board found that Mr. Rossi acted intentionally and knowingly, and that the amount of injuries he caused was great.

Based on its findings, the Board recommended the following sanctions: (1) that Mr. Rossi be suspended from the practice of law for one year based on his violations in case no. 13-0508, and one year for his violations in case no. 13-1148, with both suspensions running concurrent to each other; (2) that he be required to petition for reinstatement; (3) that, upon reinstatement, his practice be supervised for one year; (4) that he complete an additional nine hours of CLE in the area of ethics and office management prior to reinstatement; (5) that upon reinstatement, he remain on probation for a one-year period; and (6) that he pay the costs of the disciplinary proceedings.

Mr. Rossi objected to the Board's recommended sanctions. Thereafter, this Court placed the matter on the argument docket and ordered the Lawyer Disciplinary Board and Mr. Rossi to file briefs. The Lawyer Disciplinary Board filed its brief on September 4, 2014. Though ordered to do so by this Court, Mr. Rossi failed to file a brief.

## II.

## STANDARD OF REVIEW

In *Committee on Legal Ethics of the West Virginia State Bar v. McCorkle*, 192 W.Va. 286, 289, 452 S.E.2d 377, 380 (1994), this Court took the opportunity to

"resolve any doubt as to the applicable standard of judicial review" in lawyer disciplinary cases. Syllabus Point 3 of *McCorkle* holds:

> A *de novo* standard applies to a review of the adjudicatory record made before the Committee on Legal Ethics of the West Virginia State Bar [currently, the Hearing Panel Subcommittee of the Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the Committee's recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the Committee's findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

The above standard of review is consistent with this Court's ultimate authority with regard to legal ethics matters in this State. Syllabus Point 3 of *Committee on Legal Ethics of the West Virginia State Bar v. Blair*, 174 W.Va. 494, 327 S.E.2d 671 (1984), states: "This Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law."

Rule 3.7 of the *West Virginia Rules of Lawyer Disciplinary Procedure* provides that, in order to recommend the imposition of discipline of a lawyer, "the allegations of the formal charge must be proved by clear and convincing evidence." *See also* Syllabus Point 2, *Lawyer Disciplinary Bd. v. Cunningham*, 195 W.Va. 27, 464 S.E.2d 181 (1995). The various sanctions which may be recommended to this Court are set forth in Rule 3.15. It states:

15

A Hearing Panel Subcommittee may recommend or the Supreme Court of Appeals may impose any one or more of the following sanctions for a violation of the *Rules of Professional Conduct* . . . (1) probation; (2) restitution; (3) limitation on the nature or extent of future practice; (4) supervised practice; (5) community service; (6) admonishment; (7) reprimand; (8) suspension; or (9) annulment. When a sanction is imposed the Hearing Panel Subcommittee may recommend and the Court may order the lawyer to reimburse the Lawyer Disciplinary Board for the costs of the proceeding. Willful failure to reimburse the Board may be punished as contempt of the Court.

In devising suitable sanctions for attorney misconduct, we have recognized that "[a]ttorney disciplinary proceedings are not designed solely to punish the attorney, but rather to protect the public, to reassure it as to the reliability and integrity of attorneys and to safeguard its interest in the administration of justice." *Lawyer Disciplinary Bd. v. Taylor*, 192 W.Va. 139, 144, 451 S.E.2d 440, 445 (1994).

## III.

## ANALYSIS

The ODC urges this Court to accept the sanctions recommended by the Board. The ODC asserts that the recommended sanctions will not only punish Mr. Rossi, but will also serve as an effective deterrent to other members of the State Bar and restore public confidence in the ethical standards of the legal profession.

As this Court has explained, the ODC is required "to prove the allegations of the formal charge by clear and convincing evidence." Syllabus Point 1, in part, *Lawyer Disciplinary Bd. v. McGraw*, 194 W.Va. 788, 461 S.E.2d 850 (1995). Further, once the Board makes its factual findings, they are afforded substantial deference. *See* Syllabus

16

Point 3, *McCorkle*, 192 W.Va. 286, 452 S.E.2d 377. The record supports both the factual findings and rule violations as set forth by the Board. While we agree with the factual findings and rule violations found by the Board, we disagree with the recommended sanctions and will exercise our own independent judgment in fashioning the appropriate discipline. *See* Syllabus Point 3, *McCorkle*.

In considering the appropriate sanctions to impose, we are guided by the well-settled principles that

> Rule 3.16 of the *West Virginia Rules of Lawyer Disciplinary Procedure* enumerates factors to be considered in imposing sanctions and provides as follows: "In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the [West Virginia Supreme Court of Appeals] or [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors."

Syllabus Point 4, *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W.Va. 495, 513 S.E.2d 722 (1998).[13] We proceed to consider the four factors contained in Rule 3.16.

---

[13] We are also mindful of this Court's holding in Syllabus Point 3 of *Committee on Legal Ethics of the West Virginia State Bar v. Walker*, 178 W.Va. 150, 358 S.E.2d 234 (1987): "In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession."

**1. Duties Owed to Clients, the Public, the Legal System, or the Profession**

First, we consider whether Mr. Rossi violated a duty owed to a client, to the public, to the legal system, or to the profession. The record overwhelmingly demonstrates that Mr. Rossi's actions violated duties to his clients, to the legal system and to the legal profession.

Mr. Rossi repeatedly violated duties to his clients by failing to communicate with them and by failing to diligently work on their cases. Mr. Rossi's repeated failure to communicate with his clients caused them considerable time, stress and energy in attempting to simply speak with their lawyer. Mr. Rossi acknowledged this failure, stating "I don't have a defense for not responding to Mr. Williams. I don't have one. I should have. You know, the same thing with Mr. Edwards. I don't have – I should have [responded to him]."

In addition to failing to communicate with his clients, the record demonstrates that Mr. Rossi performed little, if any, work in the cases of the six complainants herein. For instance, despite telling Mr. Davis that he was going to file a motion to dismiss, Mr. Rossi not only failed to file this motion, he failed to enter a notice of appearance in the case, resulting in a default judgment being entered against Mr. Davis's company. Similarly, Mr. Rossi failed to file a lawsuit on Mr. Williams's behalf, costing Mr. Williams a substantial amount of rental income fees his property could have generated. Further, after being paid a retainer fee by Mr. Pike and Mr. Edwards, Mr. Rossi's inaction caused both of these clients to fire Mr. Rossi after extended time periods

18

had passed without any progress occurring in their cases. After repeated attempts at contacting Mr. Rossi, both Mr. Pike and Mr. Edwards fired Mr. Rossi, demanded refunds of their retainer fees and were forced to obtain new counsel to handle their respective cases.

Next, we find that Mr. Rossi violated duties to the legal system and the legal profession. Mr. Davis, the CEO of Comverge, Inc., a company located in Virginia, retained Mr. Rossi to represent his company in West Virginia. Mr. Davis stated that after his experience with Mr. Rossi he felt "taken advantage of" and was left with a bad impression of the West Virginia judicial system. Similarly, Mr. Williams testified that his experience with Mr. Rossi left him with a negative opinion of lawyers: "You don't know whether they're crooks or not. You don't know whether they're working for you or somebody else." Mr. Edwards was also left with a negative opinion of lawyers because of Mr. Rossi, stating that he has a "lack of trust" with the legal profession.

Mr. Rossi violated a duty to the legal system by repeatedly failing to respond to the ODC. Mr. Rossi failed to respond to twenty-three letters the ODC sent him regarding the six complaints herein. Similarly, he failed to follow the Investigative Panel's directive that he contact the Lawyer Assistance Program to address his depression issue. He also failed to comply with this Court's order that he file a brief in this matter.

## 2. Whether the lawyer acted intentionally, knowingly, or negligently

Second, we review the degree of intransigence in Mr. Rossi's actions. Specifically, we must determine whether Mr. Rossi's actions were intentional, knowing,

19

or negligent in nature. The Board found, and we agree, that Mr. Rossi acted intentionally and knowingly. Mr. Rossi intentionally failed to communicate with his clients and failed to perform work in their cases. In one case, the Davis complaint, Mr. Rossi intentionally lied to Mr. Davis, telling him that he was working on his case and was going to file a motion to dismiss when, in fact, Mr. Rossi did not enter a notice of appearance and did not perform any work in the case, resulting in a default judgment order being entered against Comverge, Inc. Further, Mr. Rossi acknowledged that he intentionally failed to respond to repeated requests for information from the ODC. The record is clear that Mr. Rossi acted intentionally and knowingly.

### 3. The Amount of Real or Potential Injury

Third, we examine the amount of real injury or potential injury. We find that Mr. Rossi created real injuries by failing to communicate with his clients and by failing to perform work in their cases. For instance, Mr. Williams testified that he lost approximately $7,000.00 in rental fees that he could have received if Mr. Rossi had diligently worked on his case and resolved it in a reasonable amount of time. Ten months after Mr. Williams retained Mr. Rossi, he discovered that Mr. Rossi had not filed a lawsuit on his behalf. Additionally, Mr. Davis's company suffered a potentially significant financial injury when Mr. Rossi failed to appear or perform any work in that

20

case, resulting in a default judgment order being entered against the company in the amount of $30,000.00.[14]

In addition to these financial injuries, each of the six complainants herein stated that Mr. Rossi's failure to communicate with them and to diligently work on their cases caused considerable aggravation and frustration. Mr. Pike testified that he had "a lot of frustration" with Mr. Rossi's failure to diligently work on his case. Mr. Pike stated, "There was a lot of my own time and leg work that I put in trying to resolve the case." Mr. Williams was also forced to put in his own time and leg work to resolve his case. After his repeated attempts to communicate with Mr. Rossi failed, he went to the Martinsburg courthouse to check on the status of his case. Once at the courthouse, Mr. Williams discovered that Mr. Rossi had not filed a lawsuit on his behalf.

---

[14] Mr. Davis testified that his company, Comverge, Inc., was in the process of closing when the default judgment order was entered. When asked by counsel for the ODC whether Comverge, Inc. had paid the $30,000.00 default judgment award, Mr. Davis testified:

> No, ma'am. That was the conversation I had with subsequent counsel that I had had, and their thought was because we were in the process of closing down Comverge and because of the cost to basically go through this process to have that removed and argued that it may better to just let it sit. And if it became an issue or tried – was enforced, then maybe it's worth spending the money to go out there and have it fixed, but in their [subsequent counsel's] opinion it wasn't worth it at that time. . . . So I'm still sitting out there with a $30,000.00 judgment that, in my opinion, should have never been filed to begin with.

The record is clear that Mr. Rossi's violations caused real, significant injuries.

### 4. Aggravating or Mitigating Factors

We next consider whether any aggravating or mitigating factors are present. This Court has held that "[a]ggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed." Syllabus Point 4, *Lawyer Disciplinary Bd. v. Scott*, 213 W.Va. 209, 579 S.E.2d 550 (2003).

The Board found the following aggravating factors are present: (1) a pattern of misconduct, (2) multiple offenses, and (3) substantial experience in the practice of law. We agree with the Board that these three aggravating factors are present.

The six complaints demonstrate that Mr. Rossi had a pattern of failing to communicate with his clients and failing to diligently work on their cases. In the *Standards for Imposing Lawyer Sanctions*, the American Bar Association has recognized a "pattern of misconduct" as an aggravating factor in a lawyer disciplinary proceeding. *See In re LeBlanc*, 713 So.2d 449 (La. 1998) (pattern of misconduct was aggravating factor causing lawyer's suspension); *Matter of Disciplinary Proceedings Against Dann*, 136 Wash.2d 67, 960 P.2d 416 (1998) (pattern of misconduct was aggravating factor in lawyer's suspension). Next, there is no dispute that Mr. Rossi committed multiple violations of the *Rules of Professional Conduct*.

Finally, we note that substantial experience is deemed to be an aggravating factor, while lack of experience as a lawyer is considered to be a mitigating factor. This distinction is made in recognition of the fact that "a youthful and inexperienced attorney may have [engaged in misconduct] as a result of inexperience rather than as a result of deliberate calculation." *In re Brown*, 166 W.Va. 226, 235, 273 S.E.2d 567, 572 (1980). Mr. Rossi was admitted to the practice of law in this state in 1997. At the time of his misconduct, he had been practicing law for over ten years. Thus, Mr. Rossi had substantial experience as a lawyer and the Board correctly found this to be an aggravating factor.

We next consider whether any mitigating factors are present. We have previously held that "[m]itigating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify a reduction in the degree of discipline to be imposed." Syllabus Point 2, *Scott*, *supra*. In Syllabus Point 3 of *Scott*, we further explained:

> Mitigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions; (12) remorse; and (13) remoteness of prior offenses.

23

The Board found the following mitigating factors are present: (1) absence of a dishonest or selfish motive; and (2) remorse. We agree with the Board's finding that Mr. Rossi expressed remorse for his misconduct. During his testimony before the Board, Mr. Rossi acknowledged that he was "not a good sole practitioner by any stretch of the imagination." He further acknowledged the harm he caused to Mr. Williams, Mr. Edwards, Mr. Davis and Mr. Pike.

While we agree that Mr. Rossi showed remorse, we disagree with the Board's finding that there is an absence of a dishonest or selfish motive in this case. Mr. Rossi lied to Mr. Davis when he told him that he was working on his case and was preparing a motion to dismiss when, in fact, Mr. Rossi failed to even enter a notice of appearance in the matter. Mr. Rossi has acknowledged this deceitful behavior. The record is clear that Mr. Rossi was overwhelmed in his solo law practice. However, this does not excuse lying to a client, nor does it excuse accepting retainer fees from clients and then failing to perform work on their cases.

Another potential mitigating factor was raised by Mr. Rossi when he told the ODC that his misconduct was caused, in part, by his depression. The Board found that Mr. Rossi's alleged depression was not a mitigating factor because Mr. Rossi did not present any medical evidence supporting his contention that he suffered from depression or that he sought treatment for this depression. This Court addressed this issue in Syllabus Point 3 of *Lawyer Disciplinary Bd. v. Dues*, 218 W.Va. 104, 624 S.E.2d 125 (2005), holding:

24

In a lawyer disciplinary proceeding, a mental disability is considered mitigating when: (1) there is medical evidence that the attorney is affected by a mental disability; (2) the mental disability caused the misconduct; (3) the attorney's recovery from the mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely.

Because Mr. Rossi failed to present any medical evidence demonstrating that he suffered from depression, that the depression caused his misconduct, or that he sought treatment for his depression, we agree with the Board's finding that Mr. Rossi's alleged depression is not a mitigating factor in this case.

When weighing all of the factors to be considered in imposing sanctions, we reject the Board's finding that Mr. Rossi should be given an effective one-year suspension from the practice of law. Mr. Rossi's misconduct has caused considerable financial harm to his clients and has caused them to have a "lack of trust" in our judicial system. We find it troubling that Mr. Rossi's misconduct in case no. 13-1148 occurred after the disciplinary proceedings against him in case no. 13-0508 had begun. Further, the volume of misconduct in these two cases—six separate complaints—supports our finding that a one-year suspension is an insufficient sanction.

Mr. Rossi's consistent failure to respond to the ODC in these matters and his failure to contact the Lawyer Assistance Program after being directed to do so by the Investigative Panel also weigh in favor of an increased sanction. Additionally, Mr. Rossi failed to comply with this Court's order that he file a brief in this matter. *See Lawyer Disciplinary Bd. v. Grindo*, 231 W.Va. 365, 371, 745 S.E.2d 256, 262 (2013) ("[T]he fact

25

that Mr. Grindo failed to respond to the deadlines and entreaties of this Court regarding the filing of briefs certainly weighs heavily against Mr. Grindo.").[15] We find his failure to follow this Court's order especially egregious considering Mr. Rossi's repeated failures to respond to the ODC and to follow the Investigative Panel's directive that he report to the Lawyer Assistance Program.

Based on all of the foregoing, we find that a three-year suspension from the practice of law is an appropriate sanction. Mr. Rossi was unresponsive to his clients in these six matters and caused them real injuries. Further, his misconduct has negatively affected the legal system and our legal profession's reputation. This Court has previously increased the recommended sanction in a lawyer disciplinary proceeding when a lawyer failed to communicate with his clients, caused them to suffer financial harm, and failed to respond to the ODC. *See Lawyer Disciplinary Bd. v. Aleshire*, 230 W.Va. 70, 79-80, 736 S.E.2d 70, 79-80 (2012) (The Court disagreed with the Board's recommended one-year suspension, finding "Mr. Aleshire was completely unresponsive to his clients in these two matters and caused both of them actual monetary damage. Additionally, Mr. Aleshire has shown a consistent unwillingness to respond to opposing counsel, court orders, and the ODC. Therefore, we believe a three-year suspension [is warranted].").

---

[15] On November 17, 2014, the ODC filed a motion to enhance Mr. Rossi's sanction due to his failure to file a brief in this matter. The ODC requested that Mr. Rossi's sanction "include additional time beyond the one year suspension" it had previously recommended.

We believe that suspending Mr. Rossi's law license for three years will accomplish the goals of our disciplinary system by punishing Mr. Rossi, restoring public confidence in the ethical standards of our profession and serving as a deterrent to other members of the bar. *See Lawyer Disciplinary Bd. v. Taylor*, 192 W.Va. at 144, 451 S.E.2d at 445. ("Attorney disciplinary proceedings are not designed solely to punish the attorney, but rather to protect the public, to reassure it as to the reliability and integrity of attorneys and to safeguard its interest in the administration of justice.").

In addition to suspending Mr. Rossi's law license for three years and adopting the other sanctions recommended by the Board, we impose two additional sanctions. First, prior to filing a petition for reinstatement to the practice of law, Mr. Rossi must provide the ODC with written documentation from a mental health provider indicating that his depression is under control. We impose this sanction because Mr. Rossi stated that many of his rule violations occurred because he was suffering from depression. We note that despite being ordered to do so by a directive of the Investigative Panel, Mr. Rossi failed to report his depression issues to the Lawyer Assistance Program. The second additional sanction we impose is that Mr. Rossi make full restitution to Mr. Davis if Comverge, Inc. is required to pay the default judgment order that was entered against Comverge, Inc.[16]

---

[16] See generally footnote 14, *supra*. While Mr. Davis testified that the $30,000.00 default judgment order had not been paid, he noted that if "it became an issue or was enforced, then maybe it's worth spending the money to go out there and have it fixed[.]"

(continued . . .)

**IV.**

**CONCLUSION**

For the foregoing reasons, we impose the following sanctions: (1) that Mr. Rossi be suspended from the practice of law for three years; (2) that he be required to petition for reinstatement; (3) that, upon reinstatement, his practice be supervised for one year; (4) that he complete an additional nine hours of CLE in the area of ethics and office management prior to reinstatement; (5) that upon reinstatement, Mr. Rossi will remain on probation for a one year period; (6) that he pay the costs of the disciplinary proceedings; (7) that prior to filing a petition for reinstatement to the practice of law, he provide the ODC with written documentation from a mental health provider indicating that his depression is under control; and (8) that he make full restitution to Mr. Davis if Comverge, Inc. is required to pay the default judgment order that was entered against it.

Law license suspended and other sanctions imposed.

---

*See* Syllabus Point 4, *Lawyer Disciplinary Bd. v. Ball*, 219 W.Va. 296, 633 S.E.2d 241 (2006) ("When this Court, in a lawyer disciplinary proceeding, issues an order that requires an attorney to make restitution to his or her client, the order may be enforced in two ways: (1) by the Office of Disciplinary Counsel seeking a contempt order from this Court, or (2) through the prosecution of a separate lawsuit by the client or a duly authorized representative of the client.").